BOUWMAN v CHRYSLER CORPORATION

Docket No. 52864. Submitted December 1, 1981, at Detroit.—Decided April 5, 1982. Leave to appeal applied for.

Mary Bouwman filed a complaint against Chrysler Corporation in Wayne Circuit Court alleging that defendant laid her off and ultimately discharged her on the basis of her age. At the time, plaintiff was 50 years old and had been employed by defendant for more than 30 years. Defendant moved for a directed verdict, which the court, Maureen Pulte Reilly, J., held in abeyance. The jury returned a verdict in favor of plaintiff, after which the court granted defendant's motion for a directed verdict. Plaintiff appeals. *Held:*

Plaintiff failed to establish either that she had skills, experience, background or qualifications comparable to other employees who were not laid off or that age was a determining factor in plaintiff's being laid-off. There was not sufficient evidence from which the jury could reach the conclusion that age discrimination occurred unless it were allowed to indulge in speculation. The trial court did not err in ruling, as a matter of law, that plaintiff failed to present sufficient evidence to establish a prima facie case of age discrimination.

Affirmed.

J. H. GILLIS, J., dissented. He would hold that the evidence presented a question of fact for the jury and that neither the trial court nor the Court of Appeals may substitute its judgment for that of the jury.

OPINION OF THE COURT

1. MOTIONS AND ORDERS — DIRECTED VERDICT — APPEAL.

A motion for a directed verdict tests whether or not the plaintiff has made a prima facie case and, in reviewing a trial court's

REFERENCES FOR POINTS IN HEADNOTES
[1] 5 Am Jur 2d, Appeal and Error § 886.
   75 Am Jur 2d, Trial § 473.
[2, 3, 5] 75 Am Jur 2d, Trial §§ 496, 500.
[4] 15 Am Jur 2d, Civil Rights § 233.

decision on a motion for directed verdict, the Court of Appeals will consider the plaintiff's proofs and any reasonable inferences therefrom in the light most favorable to the plaintiff.

2. TRIAL — DIRECTED VERDICT — EVIDENCE.

A motion for a directed verdict must be denied where the trial court, viewing the evidence and all legitimate inferences which may be drawn therefrom in the light most favorable to the nonmoving party, finds that the evidence establishes a prima facie case.

3. MOTIONS AND ORDERS — DIRECTED VERDICT.

A motion for directed verdict should be denied where the facts, viewed in a light most favorable to the nonmoving party, are such that reasonable minds could honestly reach different conclusions.

4. ACTIONS — AGE DISCRIMINATION.

A prima facie case of age discrimination is not shown by mere termination of a competent employee when the employer is forced to make cutbacks due to adverse economic conditions; nor can an employer be accused of discrimination because it did not create a new position in order to keep an employee on the payroll.

DISSENT BY J. H. GILLIS, J.

5. JUDGMENTS — DIRECTED VERDICT — AGE DISCRIMINATION — QUESTIONS OF FACT.

*It was error for a trial court in an age discrimination case to substitute its judgment for that of the jury by granting the defendant's motion for directed verdict, which motion had been held in abeyance, after the jury returned a verdict in favor of the plaintiff where the evidence presented a question of fact and the jury determined that the plaintiff had carried her burden of proof.*

*Rothe, Mazey, Mazey & Hamburger, P.C. (Gagleard, Munro, Addis & Gagleard,* of counsel), for plaintiff.

*Dickinson, Wright, McKean, Cudlip & Moon* (by *Thomas G. Keinbaum* and *Robert P. Young, Jr.),* for defendant.

Before: DANHOF, C.J., and J. H. GILLIS and BRON-SON, JJ.

DANHOF, C.J. Plaintiff commenced this age discrimination suit in June of 1975. Her complaint alleged that she was 50 years old and that, after 30 years of employment, defendant laid her off and ultimately discharged her on the basis of her age, in violation of Michigan Const 1963, art 1, § 2 and the Michigan State Fair Employment Practices Act, MCL 423.301 *et seq.;* MSA 17.458(1) *et seq.*[1] At the conclusion of plaintiff's proofs, and again at the conclusion of all proofs, defendant moved for directed verdict. These motions were held in abeyance. After the jury returned a verdict in plaintiff's favor, the trial court heard arguments and granted defendant's motion for a directed verdict. From this ruling, plaintiff appeals as of right.

I

There was extensive testimony given at trial. This opinion will not endeavor to summarize all of that testimony, but will only set out some of the more pertinent facts.

Plaintiff was born in March, 1925. She began working in defendant's DeSoto plant in April of 1944. After a short break in service, plaintiff began working for Detroit Universal Division (DUD) in May of 1945. DUD was subsequently acquired by defendant. From 1945 until 1957 plaintiff worked as a drill press operator. In 1957 plaintiff became a factory clerk. In 1967 plaintiff assumed the position of superintendent clerk. This was a

---

[1] The Fair Employment Practices Act was repealed by 1976 PA 453, effective March 31, 1977. For additional provisions see the Michigan Civil Rights Act, MCL 37.2101 *et seq.;* MSA 3.548(101) *et seq.*

salaried position which, unlike plaintiff's previous positions, was not represented by a union. As superintendent clerk, plaintiff's duties included, *inter alia,* some typing, computing figures such as the daily production count, consolidating various reports and general clerical work. Plaintiff was described as an excellent employee who had twice been offered the position of "foreman", which she declined. The last offer for this position was made in September of 1974.

In December of 1974 plaintiff was placed on temporary layoff. In February, 1975, plaintiff's layoff classification was changed to indefinite layoff. In April of 1975 plaintiff began to draw her pension.

In 1974 a downturn in the automobile industry affected defendant and required it to reduce its fixed costs. At the DUD plant a number of jobs were eliminated while other jobs were combined. Prior to the downturn, DUD had 1,100 hourly employees and 255 nonunion salaried employees. After the cutback, the staff was reduced to 400 hourly employees and 100 salaried employees.

With regard to plaintiff's particular department, prior to the cutbacks in personnel there had been 10 or 11 clerks and secretaries in plaintiff's unit. After the work force reduction, only three secretarial positions were ultimately retained.[2] One of the secretaries worked for the plant manager. Of the three secretaries who remained after the cutbacks, two were born in 1925. At DUD, the difference between the classifications of clerk and secretary is that secretaries are required to be able to

---

[2] After the cutbacks, a fourth employee was allowed to work an additional 60 days in order to earn her pension.

type with greater speed than clerks and secretaries are required to be able to · take shorthand, while clerks are not.

Plaintiff testified that she was laid off because of age discrimination. She stated that shortly after she was first laid off she saw her name on a list of employees who were to go back into the factory. When plaintiff questioned this, she was informed that she might have to opt to return to the factory in order to have 30 years employment with defendant and be eligible for her pension. Plaintiff informed defendant's representative that she already had 30 years employment with defendant. This fact was verified and plaintiff then opted for a temporary layoff rather than returning to the factory as an hourly worker.[3] Subsequently, plaintiff was told that her job had been eliminated. Plaintiff had to return to the office where she formerly worked in order to pick up a check. There she saw a secretary, Mary Reynolds, age 29, sitting at plaintiff's old desk and doing much of the work plaintiff had formerly performed. When plaintiff inquired about the fact that Reynolds was doing much of her work, she was informed that her job no longer existed, that Reynolds could take shorthand, and that defendant could not use plaintiff any more. Plaintiff admitted that at her deposition she had stated that she could not do the work of a secretary. She stated that if defendant needed shorthand for a particular job, she would not be able to perform that task.

Mary Reynolds became a secretary at DUD in

---

[3] There is no evidence in the record that plaintiff was ever again offered the opportunity to return to the factory as an hourly employee.

1964. After the reduction in staff, she spent 75 to 80% of her time doing plaintiff's duties for a 30-day period. During this 30-day period she was filling in for another secretary who was on sick leave.[4]

The personnel manager at DUD testified that some of the job functions performed by plaintiff had been eliminated and some had not. However, because of the cutbacks, the position of superintendent clerk had been abolished. After the work force reduction only three secretarial positions remained in plaintiff's unit. One of the secretaries worked for the plant manager. The two remaining secretaries were picked on the basis of the highest corporate service as secretaries. One of the two secretaries with the highest corporate service was on sick leave in January of 1975, so Reynolds was picked to temporarily do her job. Reynolds remained at that job approximately one month until the secretary on sick leave returned.

The personnel manager asserted that plaintiff was not selected for one of the remaining secretarial positions because she did not have the proper qualifications. He asserted that age was not a consideration in determining who would remain after the work force reduction. The personnel manager also stated that age was never a factor used in determining promotions; however, he did admit that one of defendant's standard forms did list age as a personal characteristic affecting one's potential and performance. The standard form

---

[4] Mary Reynolds remained employed with defendant after the cutbacks. However, the secretary who was on sick leave assumed much of the work done by plaintiff.

which listed age and health was used for evaluating management personnel for raises.[5]

Defendant's plant manager testified that, after receiving a corporate directive to reduce fixed costs by 50%, the management staff of DUD held meetings and tried to cut costs by eliminating some jobs and combining other job functions. One of the goals was to have as much flexibility as possible. The plant manager testified that at these meetings only job functions were discussed, not the individuals who would ultimately fill the remaining positions. The plant manager also asserted that age was not a factor in determining who would remain in the jobs not eliminated.

There was also testimony that defendant had an early retirement program and that qualified employees were offered this option at the time cutbacks were being made.[6]

## II

The parties agree that the sole issue before us is whether the trial court erred in ruling, as a matter of law, that plaintiff failed to present sufficient evidence to establish a prima facie case of age discrimination.[7]

---

[5] There was no evidence that this form was related in any way to the decision to abolish the position of superintendent clerk. Nor was there any evidence that this form was used in any employment decision concerning plaintiff. Compare, *Laugesen v Anaconda Co,* 510 F2d 307 (CA 6, 1975).

[6] Our review of the testimony indicates that this was a permissive early retirement program and, therefore, its mere existence does not constitute a prima facie case of age discrimination. *McCorstin v United States Steel Corp,* 621 F2d 749 (CA 5, 1980). Unlike in *McCorstin,* the facts of the instant case do not indicate that the availability of an early retirement program was a factor in plaintiff's being laid off.

[7] Since defendant's motion for directed verdict was not ruled on

It is well established that a motion for directed verdict tests whether or not the plaintiff has made a prima facie case. *Caldwell v Fox,* 394 Mich 401, 407; 231 NW2d 46 (1975). In reviewing the trial court's decision on a motion for directed verdict, this Court will consider the plaintiff's proofs and any reasonable inferences therefrom in the light most favorable to the plaintiff. *Silisky v Midland-Ross Corp,* 97 Mich App 470; 296 NW2d 576 (1980). If the evidence establishes a prima facie case, the motion must be denied. *Hayes v General Motors Corp,* 106 Mich App 188, 192; 308 NW2d 452 (1981). A motion for directed verdict should be denied where the facts, viewed in a light most favorable to the nonmoving party, are such that reasonable minds could honestly reach different conclusions. *Tiffany v Christman Co,* 93 Mich App 267; 287 NW2d 199 (1979).

Our determination of whether a directed verdict was properly granted in the instant case is complicated by the absence of Michigan authority addressing what is required to establish a prima facie case of age discrimination sufficient to withstand a motion for directed verdict. Indeed, there are only two Michigan cases addressing the burden of proof in an age discrimination suit.

One case, *Schipani v Ford Motor Co,* 102 Mich App 606; 302 NW2d 307 (1981), addressed the issue

until after the jury had reached a verdict, it would have probably been more appropriate to label the motion as one for judgment notwithstanding the verdict. However, both parties on appeal treat the motion as one for directed verdict. Since the standards are essentially the same with respect to the appropriateness of a directed verdict or a judgment notwithstanding the verdict, we will adopt the parties' characterization of the motion as one for directed verdict. See *Isom v Farrugia,* 63 Mich App 351, 354-355; 234 NW2d 520 (1975), *Hayes v General Motors Corp,* 106 Mich App 188, 192; 308 NW2d 452 (1981), *Basic Food Industries, Inc v Grant,* 107 Mich App 685, 695; 310 NW2d 26 (1981).

of whether summary judgment was appropriate. *Schipani* analogized to Michigan cases dealing with racial discrimination and held that a complaint establishes a prima facie case of age discrimination where the allegations established that the defendant was predisposed against plaintiff because of his age and acted on that predisposition. The other Michigan case addressing the burden of proof in an age discrimination suit is *Gallaway v Chrysler Corp,* 105 Mich App 1; 306 NW2d 368 (1981). *Gallaway* addressed the adequacy of jury instructions. Stating that there was no Michigan authority addressing the burden of proof in an age discrimination suit, *Gallaway* looked to federal case law and said that plaintiff is entitled to recovery if age discrimination was a determining factor in plaintiff's discharge. Neither *Schipani* nor *Gallaway* is dispositive of the issue raised in the instant case.

Because of the lack of Michigan authority, both parties have cited us to federal authority in support of their respective positions. Therefore, it may be helpful to briefly summarize the burden of proof in federal age discrimination actions.

Federal cases interpreting the federal age discrimination in employment act (ADEA), 29 USC 621 *et seq.,* have adopted the basic allocation of burdens and order of presentations of proofs used in actions brought under Title VII of the Civil Rights Act of 1964, 42 USC 2000e *et seq.* See, *e.g., Loeb v Textron, Inc,* 600 F2d 1003 (CA 1, 1979), *Laugesen v Anaconda Co,* 510 F2d 307 (CA 6, 1975), *McCorstin v United States Steel Corp,* 621 F2d 749 (CA 5, 1980), *Sahadi v Reynolds Chemical,* 636 F2d 1116 (CA 6, 1980).

Thus, in ADEA cases the plaintiff has the initial burden of proving by a preponderance of the evidence a "prima facie case" of age discrimination. In federal cases, the term "prima facie case" is used to mean that the plaintiff has provided enough evidence to create a rebuttable presumption of age discrimination. Federal discrimination cases do not use the term "prima facie case" in the other accepted sense, to wit, was sufficient evidence produced to allow the case to go to the jury. See *Texas Dep't of Community Affairs v Burdine,* 450 US 248; 101 S Ct 1089; 67 L Ed 2d 207 (1981).

A plaintiff in an ADEA case might establish a "prima facie case" of age discrimination by offering evidence: (1) that the plaintiff was within the protected age group; (2) that the plaintiff was performing his or her job at a level that met the employer's legitimate expectations; (3) that the plaintiff was laid off or dismissed; and (4) that the employer sought someone to perform the same work after the plaintiff left. *Loeb, supra,* 1014.

Once a plaintiff has established a "prima facie case", the burden shifts to the defendant, who must articulate some legitimate, nondiscriminatory reason for the employee's rejection or dismissal. Should the defendant meet this burden, the plaintiff must then be given an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a mere pretext for discrimination.

It should be noted that, although the federal cases speak of the burden shifting from plaintiff to defendant, in actuality the only burden that shifts in federal discrimination cases is the burden of

producing evidence in support of the conflicting positions. Throughout the case, the burden of proving discrimination by a preponderance of the evidence stays with the plaintiff. *Burdine, supra.*

While the allocation of burdens and order of presentation of proofs used in ADEA cases has obvious advantages, we have not been able to locate any Michigan case which has adopted this approach. Since it is not necessary to a determination of the instant case, we do not reach the question whether the federal approach should be adopted in Michigan age discrimination cases.

In the instant case, when the trial court and the parties used the term "prima facie case" they were obviously using the term to indicate whether plaintiff produced sufficient evidence to allow the case to go to the jury. They did not use the term "prima facie case" in the sense that that term is used in ADEA cases.

In this regard, the trial court accepted plaintiff's delineation of her burden in establishing a prima facie case of age discrimination: (1) that plaintiff had skills, experience, background, or qualifications comparable to other employees who were not laid off and (2) that age was a determining factor in plaintiff's being laid off. We agree with this characterization of plaintiff's burden and would only add that plaintiff also had the burden of establishing that she was in the affected class. In reaching the conclusion that plaintiff has correctly stated the requisites of a prima facie case of age discrimination, we note that this standard is consistent with the burden of proof adopted in *Gallaway, supra,* and with federal authority.[8]

---

[8] The requirements of a prima facie case of age discrimination may

The trial court found that plaintiff had failed to establish either that she had skills, experience, background or qualifications comparable to other employees who were not laid off or that age was a determining factor in plaintiff's being laid off. We agree.

While we empathize with plaintiff's plight, our review of the testimony produced at trial indicates that plaintiff merely established that she was laid off and that a younger woman temporarily took over some of the duties that plaintiff had performed.

There was no evidence that plaintiff had shorthand skills comparable to those of the secretaries who were retained after the cutbacks. Indeed, by plaintiff's own testimony she could not take shorthand if required to do so. In this regard, we also note that plaintiff's contention that the shorthand requirement was a pretext is not supported by the evidence. Indeed, there was testimony that Reynolds took shorthand at least twice during the 30-day period in which she filled in for the secretary who was out on sick leave.

Looking at the testimony in the light most favorable to plaintiff, we also must conclude that there was not sufficient evidence from which the jury could reach the conclusion that age discrimination occurred unless they were allowed to indulge in speculation.

A prima facie case of age discrimination is not shown by mere termination of· a competent em-

vary somewhat depending on the facts. Thus, a person who was not hired for a position because of her age may have a somewhat different burden of proof than that of a person who had a job and then was laid off or discharged.

ployee when the employer is forced to make cut-
backs due to adverse economic conditions. *Sahadi,
supra,* 1118. Nor can an employer be accused of
discrimination because it did not create a new
position for a plaintiff in order to keep her on the
payroll. See *Stanojev v Ebasco Services, Inc,* 643
F2d 914, 920 (CA 2, 1981).

Finally, we note that plaintiff's bare assertion
that she thought she was a victim of age discrimi-
nation is not enough, in itself, to take the case to
the jury. Were we to hold otherwise, a directed
verdict would never be appropriate in an age
discrimination suit.

Affirmed. Costs to defendant.

BRONSON, J., concurred.

J. H. GILLIS, J. *(dissenting).* I must dissent. The
evidence presented a question of fact for the jury.
The jury determined that plaintiff carried her
burden of proof. Neither the trial court nor this
Court may substitute its judgment for that of the
jury.

The majority opinion suggests that plaintiff's
lack of shorthand skills supports its position that
the layoff and discharge were not the result of age
discrimination. In this regard the majority points
out that plaintiff's replacement took shorthand "at
least twice during [a] 30-day period". Such mar-
ginal use of an allegedly necessary skill suggests to
me the very evidence from which a jury could find
that the shorthand requirement was a pretext.