774 F.2d 1163
 39 Empl. Prac. Dec. P 35,888
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Philip Rothschild and Maxine Rothschild, Plaintiffs-Appellants,
v.
Samsonite Corporation, a foreign corporation, Defendant-Appellee.
 No. 84-1245
 United States Court of Appeals, Sixth Circuit.
 9/17/85
 
 E.D.Mich.
 AFFIRMED
 On Appeal from the United States District Court for the Eastern District of Michigan
 Before: ENGEL, MARTIN and KRUPANSKY, Circuit Judges.
 PER CURIAM.
 
 
 1
 This appeal involves three separate issues of Michigan law. The first concerns what evidence is required to avoid a directed verdict on a claim of age discrimination under Michigan's Elliott-Larsen Civil Rights Act, Mich. Comp. Laws Ann. Sec. 37.2101, et seq. The second is whether the plaintiff has made out a claim for breach of an implied employment contract. The third is whether Michigan law recognizes a spouse's cause of action for loss of consortium under the Elliott-Larsen Act.
 
 
 2
 The plaintiff, Philip Rothschild, was first employed by the defendant, Samsonite Corporation, in February of 1948 as a sales representative in Samsonite's luggage division. Rothschild continued to work for Samsonite and eventually was promoted to Senior Sales Representative. During his entire 33 years with Samsonite, Rothschild worked in the Detroit area. He was extremely successful at his job, setting records for total volume sales for the United States and receiving numerous awards. In 1981, because of severe economic conditions and the rapid decline in company sales, Samsonite officers decided to consolidate the two sales territories that made up the Detroit area market. Fred Richter, who was 25 years old and had less than one year's job experience, was the sales representative in the other Detroit area territory. When the consolidation occurred, Richter was given responsibility for the consolidated territory, and Rothschild was asked to transfer to a territory in North and South Dakota. Rothschild said that he did not want to leave Detroit, and Ralph Rabin, Samsonite's Vice President of Sales, offered to transfer him to the St. Louis, Missouri territory instead, although there was no opening in St. Louis at the time. The only other option offered by the company was retirement. Rothschild, who was 62 years old and had lived for at least 33 years in the Detroit area, was unwilling to move. Therefore, he chose to retire.
 
 
 3
 Rothschild brought suit against Samsonite in Michigan state court, charging Samonite with age discrimination in violation of Michigan's Elliott-Larsen Civil Rights Act. Rothschild also alleged that his termination violated an implied employment contract requiring cause for transfer or discharge. Rothschild's wife, Maxine, asserted a claim for loss of consortium. Samsonite removed the case to the United States District Court for the Eastern District of Michigan, based upon diversity jurisdiction.
 
 
 4
 Before trial, the district court granted Samsonite's motions for summary judgment on the loss of consortium and breach of implied employment contract claims. Judge Churchill held that Michigan law did not recognize a cause of action for loss of consortium in civil rights cases. He also held that there was no evidence of an implied contract that Samsonite would transfer its sales representatives only for just cause.
 
 
 5
 On March 19, 1984 the parties went to trial on the age discrimination claim. Samsonite disputed Rothschild's allegations and argued that the decision to retain Fred Richter as the sales representative in the Detroit area was based on the fact that Richter had established a 'comfortable relationship' with the people at Hudson's and that Richter could prepare a business plan to help sell the Hudson's account. According to Samsonite, the Hudson's account was the most important account in the Detroit area although total dollar volume sales to the Montgomery Wards account serviced by Rothschild was greater than the volume of sales to Hudson's. At the end of the plaintiff's case, Samsonite moved for a directed verdict. Judge Churchill granted the motion, finding insufficient evidence to show that age was a determinative factor in the Samsonite's actions.
 
 
 6
 The Rothschilds appealed on all three of their claims. They argue that they have produced sufficient evidence to create an inference of age discrimination, giving rise to questions of fact that must be resolved by the jury. They also claim that they have presented enough evidence of an implied employment contract to make out a question of material fact for the jury. Finally, they contend that the Michigan Supreme Court would recognize a claim for loss of consortium under the Elliott-Larsen Act.
 
 
 7
 We conclude that the district court did not err in holding that there was no evidence to support Rothschild's claim of an implied contract whereby Samsonite would continue to employ him only in Detroit, absent some just cause for transfer or removal.
 
 
 8
 With regard to Rothschild's age discrimination claim, we note that under Michigan law, in order to reach the jury in a case involving reduction in work force, the plaintiff must show that age was a determining factor in his being laid off. Bouwman v. Chrysler Corp., 114 Mich. App. 670, 319 N.W.2d 621 (1982); see also LaGrant v. Gulf & Western Manufacturing Company, 748 F.2d 1087 (6th Cir. 1984) (involving claims under both the Michigan Elliott-Larsen Civil Rights Act and the federal Age Discrimination Act). We conclude that Judge Churchill did not err in holding as a matter of law that Rothschild's evidence was insufficient to carry his burden. No claim was advanced that Samsonite's determination to consolidate the two sales territories that had previously made up the Detroit area market was motivated by any intent to discriminate against Rothchild or anyone else on account of age. On the contrary, the evidence showed that the move was prompted solely by a perceived need to respond to adverse economic conditions. Samsonite's asserted reason for keeping Richter in the Detroit area was that he handled the Hudson's account. While the parties disagree about the method for determining the relative importance of the Hudson's account, there is no disagreement that Hudson's was indeed not only a valued buy a highly important customer whose needs would have to be serviced by the sales representative in the consolidated district. Likewise, the testimony is undisputed that plaintiff himself earlier had agreed voluntarily that responsibility for the account should be given to someone else. Under these circumstances, the trial judge did not err in concluding that there was insufficient evidence of discriminatory intent underlying Samsonite's actions to justify submission of that issue to the jury. It also follows that Maxine Rothschild's separate claim for loss of consortium must fail by reason of the failure of her husband's claims; therefore, we do not reach the question whether such a claim is otherwise allowable under Michigan law.
 
 
 9
 AFFIRMED.