# STATE OF MICHIGAN

# COURT OF APPEALS

ESTATE OF LOREN ALEX GALLIVAN by
JUNE Y. GALLIVAN, Personal Representative,
PHYLLIS E. BRIGGS, KARLA RAE
JAMIESON, and VERNON L. DUFF, and on
Behalf of Themselves and All Others Similarly
Situated,

UNPUBLISHED
November 2, 2017

Plaintiffs-Appellants/Cross-
Appellees,

v

No. 331832
Grand Traverse Circuit Court
LC No. 2014-030499-NO

DBMJ REHABILITATION SERVICES, PLLC,
d/b/a NEUROMUSCULAR AND
REHABILITATION ASSOCIATES OF
NORTHERN MICHIGAN, STEPHEN
ANDRIESE, M.D., JAMES R. MACKENZIE,
M.D., and RICHARD BALL, M.D.,

Defendants-Appellees/Cross-
Appellants,

and

TRACY RIDDLE, D.O. and JULIE GRONEK,
M.D.,

Defendants.

Before: TALBOT, C.J., and SAWYER and STEPHENS, JJ.

PER CURIAM.

In this class action suit, the named plaintiffs, and others similarly situated in Michigan, received preservative free Methylprednisolone Acetate (PF-MPA) epidural steroid injections that were contaminated with a fungus, Exserohilium rostratum. The contaminated vials of PF-MPA were produced by the New England Compounding Center (NECC), ordered by defendant physician James R. Mackenzie, M.D., and sold and administered to plaintiffs in 2012 by defendant DBMJ Rehabilitation Services, PLLC. Plaintiffs suffered fungal infections, and some

-1-

plaintiffs died. A two-count class action Complaint followed on August 29, 2014, alleging general negligence and medical malpractice. Plaintiffs' general negligence claims were dismissed and the case proceeded to trial on a theory of medical malpractice. The jury returned a verdict in favor of defendants.

Plaintiffs appeal as of right the judgment of no cause of action entered in favor of defendants following the jury trial. Defendants cross-appeal by right to challenge the trial court's decisions to deny them partial summary disposition and directed verdict. We affirm.

## I. ORDINARY NEGLIGENCE CLAIM

Plaintiffs first challenge the summary dismissal of their ordinary negligence claim under MCR 2.116(C)(7).

We review de novo the trial court's decision to grant or deny a motion for summary disposition. *Adair v State*, 470 Mich 105, 119; 680 NW2d 386 (2004).

Plaintiffs' allegations of negligence mirrored those pled under its medical malpractice claim.[1] The trial court dismissed plaintiffs' ordinary negligence count after determining that the claim sounded in medical malpractice. It is the duty of the court to determine "whether the nature of a claim is ordinary negligence or medical malpractice . . . under MCR 2.116(C)(7)." *Bryant v Oakpointe Villa Nursing Ctr*, 471 Mich 411, 419; 684 NW2d 864 (2004). In *Bryant*, our Supreme Court held that any claim brought for actions that occurred within the course of a professional relationship and that require examination of the exercise of medical judgment are malpractice claims regardless of how a plaintiff labels them. *Id*. at 422. "[A] professional physician-patient relationship is a legal prerequisite to basing a cause of action in professional malpractice against a physician. A physician-patient relationship exists where a doctor renders professional services to a person who has contracted for such services." *Hill by Burston v Kokosky*, 186 Mich App 300, 303; 463 NW2d 265 (1990) (internal citation omitted). As to medical judgment *Bryant* explained, "[i]f the reasonableness of the health care professionals' action can be evaluated by lay jurors, on the basis of their common knowledge and experience, it is ordinary negligence. If, on the other hand, the reasonableness of the action can be evaluated by a jury only after having been presented the standards of care pertaining to the medical issue before the jury explained by experts, a medical malpractice claim is involved." *Bryant*, 471 Mich at 423.

Plaintiffs presented two claims under the count of general negligence: 1) that defendants failed to investigate or vet the NECC, and 2) that defendants failed to ensure that plaintiffs received sterile and uncontaminated injections of PF-MPA. We conclude under *Bryant* that both claims sounded in medical malpractice.

---

[1] *Bryant* instructed plaintiffs "to file their claims alternatively in medical malpractice and ordinary negligence" when "the line between ordinary negligence and medical malpractice is not easily distinguishable[.]" *Bryant v Oakpointe Villa Nursing Ctr*, 471 Mich 411, 432-433; 684 NW2d 864 (2004).

Plaintiffs argue that because their failure to vet claim refers to defendants' initial decision in 2003 to choose the NECC as its supplier of PF-MPA, the claim predates the existence of a physician-patient relationship between plaintiffs and defendants. *Bryant* does not require that the physician-patient relationship precede all of the conduct forming the basis of a claim of wrongful conduct. Under *Bryant*, the claim must "pertain[] to an action that occurred within the course of a professional relationship." *Id*. at 422. The harm underpinning plaintiffs' claims occurred after injection with a contaminated steroid under a physician's care. Thus, the injections occurred during the physician-patient relationship. Plaintiffs also argue their failure to vet claim did not raise questions of medical judgment. Their theory is that defendants made their decision to order PF-MPA from compounder NECC without exercising due diligence. They theorize that the defendants' agent, Kluzak, made the decision to order from the NECC solely based upon her personal comfort with the NECC staff. This theory ignores the fact that Kluzak was directed to order a preservative free MPA. The risks associated with contamination, the procedures necessary to limit the risks of contamination, and the decisions as to whether to administer any given compound all involve issues outside the purview of persons without special training.

Plaintiffs do not dispute that their additional claim, that defendants failed to ensure the sterility of PF-MPA injections, occurred within the course of a physician-patient relationship. They argue instead that expert testimony would not be required for the jury to understand how defendants violated MCL 333.17751(1) by purchasing PF-MPA in bulk from the NECC without patient-specific prescriptions. This argument is based on a theory of strict liability that is not cognizable in either ordinary negligence or medical malpractice. *Bryant*, 471 Mich at 425-426.[2] As to any argument that violation of the statute was itself evidence of negligence, MCL 333.17745 applies to pharmacists and not physicians and therefore, ascribes no duty to these defendants.

## II. MEDICAL MALPRACTICE CLAIM

Defendants and Dr. Ball, individually, moved the trial court for summary disposition under MCR 2.116(C)(10) and, later, for a directed verdict. We review both motions de novo and limit our review to the record before the court at the time the motion was heard. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999); *Spiek v Michigan Dept of Transp*, 456 Mich 331, 337; 572 NW2d 201 (1998); *Krohn v Home–Owners Ins Co*, 490 Mich 145, 155; 802 NW2d 281 (2011); *Heaton v Benton Const Co*, 286 Mich App 528, 532; 780 NW2d 618 (2009).

---

[2] On appeal, plaintiffs also rely on the deposition testimony of Dr. Anthony Chiodo for the same theory of strict liability. They contend the doctor testified that the ordering of PF-MPA was not a standard of care issue, but rather an issue of whether defendants "were following the licensing guidelines for obtaining the medication." Dr. Chiodo's testimony was not attached to plaintiffs' response to defendants' motion for partial summary disposition and was therefore not considered by the court in deciding the motion. "[A]ppellate review of the trial court's decision is limited to the evidence that had been presented at the time the motion was decided." *Gorman v Am Honda Motor Co, Inc*, 302 Mich App 113, 120; 839 NW2d 223 (2013). We therefore decline to consider Dr. Chiodo's testimony on appeal.

"MCR 2.116(C)(10) tests the factual support of a plaintiff's claim. The court considers the affidavits, pleadings, depositions, admissions, and other documentary evidence submitted or filed in the action to determine whether a genuine issue of any material fact exists to warrant a trial." *Spiek*, 456 Mich at 337. "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003).

Defendants argue the court erred in denying them summary disposition because they had no duty to investigate the NECC under the common law. The trial court held that the issue was not whether a duty of care existed, but whether there was a violation of the standard of care. We agree.

"In a medical malpractice case, the plaintiff bears the burden of proving: (1) the applicable standard of care, (2) breach of that standard by defendant, (3) injury, and (4) proximate causation between the alleged breach and the injury. Failure to prove any one of these elements is fatal." *Wiley v Henry Ford Cottage Hosp*, 257 Mich App 488, 492; 668 NW2d 402 (2003). The applicable standard of care is not a part of the question of whether a duty exists. *Moning v Alfono*, 400 Mich 425, 437; 254 NW2d 759 (1977). " 'Duty' comprehends whether the defendant is under any obligation to the plaintiff to avoid negligent conduct; it does not include where there is an obligation the nature of the obligation: the general standard of care and the specific standard of care." *Id*. at 437.

> [T]he jury decides whether there is cause in fact and the specific standard of care: whether defendants' conduct in the particular case is below the general standard of care, including ... whether in the particular case the risk of harm created by the defendants' conduct is or is not reasonable. [*Id*. at 438].

Defendants' motion for partial summary disposition argued that in lieu of independently investigating the NECC, it was reasonable for them to rely on sterility reports and monitoring by the FDA and the state. They attached the deposition testimonies of phlebotomist Susan Minor, Dr. Andriese, Dr. Ball, and Dr. MacKenzie. Each of the doctors testified that they reasonably relied on the sterility reports from Analytical Research Laboratories that accompanied the shipments of PF-MPA from the NECC. More specifically, the doctors relied on Minor to look at the report to ensure it said the shipment was sterile and to notify them of any problems. Minor testified that her determination of the sterility of the vials rested definitively on whether the lab report stated they were sterile. In response, plaintiffs presented the affidavit of Dr. Frank J.E. Falco. Dr. Falco opined *inter alia*, that defendants violated the standard of care by failing to ensure the PF-MPA they obtained was from a reputable and safe supplier, free of contaminates, and compounded in compliance with applicable standards and in a way that would eliminate contamination. Dr. Falco's affidavit created a question of fact as to whether the reliance on the report and the defendants' other processes were reasonable where the microbiology reports tested 5 and 10 ml amber vials for sterility and the shipments of PF-MPA defendants received were 1 ml clear vials.

"It is well established that a motion for directed verdict tests whether or not the plaintiff had made a prima facie case." *Bouwman v Chrysler Corp*, 114 Mich App 670, 677; 319 NW2d

621 (1982). "In an action alleging medical malpractice, the plaintiff has the burden of proving that he or she suffered an injury that more probably than not was proximately caused by the negligence of the defendant or defendants." MCL 600.2912a(2). "Proof of causation requires both cause in fact and proximate cause." *Wiley*, 257 Mich App at 496. "The cause in fact element generally requires showing that 'but for' the defendant's actions, the plaintiff's injury would not have occurred." *Skinner v Square D Co*, 445 Mich 153, 163; 516 NW2d 475 (1994) citing Prosser & Keeton, Torts (5th ed), § 41, p 266. "Whether proximate cause or legal cause is established normally requires examining the foreseeability of the consequences and whether the defendant should be held legally responsible for those consequences." *Auto Owners Ins Co v Seils*, 310 Mich App 132, 157; 871 NW2d 530 (2015).

Defendants argued to the trial court and here that plaintiffs' trial evidence did not meet the burden of going forward on proximate cause. Plaintiffs presented two physicians to testify on this issue and the standard of care. Dr. Lloyd Saberski opined that defendants' choice of the NECC as its supplier of PF-MPA violated the standards of practice because compounders did not have the resource ability to maintain sterility and other commercially manufactured products were available to defendants. He was of the opinion that had defendants ordered Depo-Medrol from a manufacturer, plaintiffs would not have suffered injury from contaminated steroids because of the FDA's regulated involvement with manufacturers and the more sterile manufacturing process. Dr. Falco also opined that defendants violated the standard of practice by making bulk purchases of injectable steroids from a compounder instead of a manufacturer. He too was of the opinion that had defendants purchased their steroids from a manufacturer, "more likely than not, there would have been no problems" for plaintiffs. There was further evidence that contamination occurred, not at the lab where 5 ml and 10 ml samples of PF-MPA were tested, but at the NECC during the packaging process of the 1 ml vials that were sent to defendants. Dr. Anurag N. Malani, plaintiffs' infectious disease expert, concluded that the fungal infections suffered by plaintiffs were caused by the contaminated injections they received from defendants. It could be inferred from this evidence that but for defendants' decision to purchase PF-MPA from the NECC, a compounding pharmacy, defendants would not have received contaminated steroids and plaintiffs, in turn, would not have suffered fungal infections.

Defendants additionally argue that the NECC's criminal conduct was an intervening and superseding cause of plaintiffs' injuries. In contrast, plaintiffs offered Dr. Loyd Allen who testified that according to the Massachusetts State Board of Pharmacy, it was illegal for the NECC to issue prescriptions without a patient-specific script. Plaintiffs also presented evidence that the NECC was issued warning and cease-and-desist letters to stop shipping manufactured goods. They submitted NECC marketing materials, as well as NECC order forms, which clearly stated, "Product is dispensed by prescription only." "The general rule—that an intervening, independent and efficient cause severs whatever connection there may be between the plaintiff's injuries and the defendant's negligence—is not controlling if the intervening act was reasonably foreseeable." *Davis v Thornton*, 384 Mich 138, 148; 180 NW2d 11 (1970) (internal citations omitted). Here, a question of fact existed as to whether defendants could foresee that the NECC's practices of dispensing medications to defendants in bulk, i.e., 100 vials for 25 patient names and not by patient-specific script, had criminal consequences.

Defendants have argued throughout, in motions for summary disposition and as a part of their directed verdict arguments, that they were not responsible for learning about compounding

pharmacies because knowledge of such was not part of a physician's foundational training in medical school or a topic of discussion amongst their colleagues in the field and thus, they did not breach the standard of care for a physician. There was a question of fact however, as to whether defendants were responsible to investigate the use of compounding pharmacies in general or this compounder in specific. In addition to evidence admitted on the knowledge within the medical community of risks of using compounders that failed to meet certain standards, defendants admit that they did research the machines and products required to safely and effectively perform the procedure. Defendants also argued that the harm was not foreseeable because the probability of harm was extremely remote given the NECC's track record of providing defendants with PF-MPA for eight years before the 2012 recall. However, "[t]he determination of remoteness, . . . should seldom, if ever, be summarily determined." *Id*. at 147-148. Viewing the evidence in the light most favorable to plaintiffs, the nonmoving party, the trial court did not err in denying defendants' motion for directed verdict on the element of causation.

Dr. Ball also moved the trial court for partial summary disposition under MCR 2.116(C)(10) and a directed verdict on the failure to present evidence as to any physician-patient relationship with him. Based on the evidence presented at the time of the motion for summary disposition, we conclude the trial court did not err in denying Dr. Ball summary disposition as to causation because a question of fact existed as to whether Dr. Ball's choice of the NECC and assent to defendants' purchasing practices were reasonable or violated the standard of care. We also conclude that the record does not offer support for the existence of a physician-patient relationship between Dr. Ball and any of the plaintiffs. Lack of a physician-patient relationship should have caused the court to render a directed verdict in Dr. Ball's favor, because failure to prove any one of the elements in a medical malpractice case is fatal. *Wiley*, 257 Mich App at 492. The final disposition of this case in defendants' favor however makes this issue moot. See *Contesti v Attorney Gen*, 164 Mich App 271, 278; 416 NW2d 410 (1987) ("An issue is moot where circumstances render it impossible for the reviewing court to grant any relief.")

## III. THE STATUTE OF REPOSE

MCR 2.116(C)(7) permits summary disposition where a claim is statutorily barred. *Sills v Oakland Gen Hosp*, 220 Mich App 303, 307; 559 NW2d 348 (1996).

"A statute of repose prevents a cause of action from ever accruing when the injury is sustained after the designated statutory period has elapsed. A statute of limitation, however, prescribes the time limits in which a party may bring an action that has already accrued." *Id*. at 308 (internal citations omitted). The general period of limitations in which to file an action charging malpractice is two years. MCL 600.5805(6). However, "[t]he periods of limitation under [MCL 600.5805] are subject to any applicable period of repose established in section 5838a, 5838b, or 5839." MCL 600.5805(15). MCL 600.5838a(2), the applicable statute of repose provides that "an action involving a claim based on medical malpractice may be commenced at any time within the applicable period prescribed in section 5805 or . . . within 6 months after the plaintiff discovers or should have discovered the existence of the claim, whichever is later. However, except as otherwise provided in section 5851(7) or (8), the claim shall not be commenced later than 6 years after the date of the act or omission that is the basis for the claim."

Again, plaintiffs alleged two omissions by defendants: 1) failure to vet the NECC, and 2) failure to ensure the sterility of the PF-MPA from the NECC. "Because a plaintiff's injury can be causally related to multiple acts or omissions, it is possible for the plaintiff to allege multiple claims of malpractice premised on discrete acts or omissions—even when those acts or omissions lead to a single injury—and those claims will have independent accrual dates determined by the date of the specific act or omission at issue." *Kincaid v Cardwell*, 300 Mich App 513, 525; 834 NW2d 122 (2013). Plaintiffs' failure to ensure sterility claim is based on the contaminated injections they received in 2012 and their first complaint was filed in August 2014. Thus, the failure to ensure sterility claim was undoubtedly timely. The failure to vet claim, on the other hand, is based on a decision by defendants that occurred approximately in 2003. Accordingly, at first glance, it appears that plaintiffs' failure to vet claim should have been dismissed per the statute of repose.

In defense of their failure to vet claim, plaintiffs argue that defendants had an ongoing duty to vet the NECC with each subsequent purchase of PF-MPA. See *McKiney v Clayman*, 237 Mich App 198; 602 NW2d 612 (1999); *Kincaid*, 300 Mich App 513. Plaintiffs contend that in accord with *Kincaid*, they were able to surmount summary disposition upon showing that a question of fact existed as to whether defendants' continued reliance on the NECC was unreasonable. We agree. Plaintiffs pled specific facts that after defendants' 2003 decision to choose the NECC as its supplier, information became widely known as to the risks associated with compounded drugs. Defendants did not submit documentation to contradict these developments in the medical community. When the contents of the complaint are accepted as true, plaintiffs' complaint allegations pled "facts that would establish that the continued adherence at the later point constituted a breach of the duty owed to the plaintiff." *Kincaid*, Mich App at 530-531. Accordingly, plaintiffs' failure to vet claim was not barred by the statute of repose.

## IV. EVIDENTIARY ISSUES

Plaintiffs challenge the trial court's determination of the relevancy of three pieces of evidence: 1) the NECC customer list, 2) testimony as to FDA recalls, and 3) testimony as to NECC inspection reports.

We review for abuse of discretion the trial court's evidentiary rulings. *Craig v Oakwood Hosp*, 471 Mich 67, 76; 684 NW2d 296 (2004). "A trial court abuses its discretion when its decision falls outside the principled range of outcomes." *Donkers v Kovach*, 277 Mich App 366, 388; 745 NW2d 154 (2007). "Admission of rebuttal evidence is within the sound discretion of the trial judge and will not be disturbed absent a clear abuse of discretion." *People v Figgures*, 451 Mich 390, 398; 547 NW2d 673 (1996). Appellate relief for evidentiary error is not warranted "unless refusal to take this action appears to the court inconsistent with substantial justice," MCR 2.613(A), or affects the substantial right of a party, MRE 103(a).

Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. All relevant evidence is admissible. MRE 402. A trial court however, may exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice or confusion. MRE 403. "[T]he trial court has the

responsibility to control the introduction of evidence and the arguments of counsel and to limit them to relevant and material matters." *Tobin v Providence Hosp*, 244 Mich App 626, 640-641; 624 NW2d 548 (2001).

## A. THE NECC CUSTOMER LIST

The trial court made two separate rulings on the relevancy of the NECC customer list. The first ruling, which allowed defendants to mention the list as background information in their opening statement, was an abuse of discretion. The customer list was not probative of the background of the national scale of the outbreak of fungal infections from the NECC's contaminated steroids because the majority of customers on the list had not ordered PF-MPA. The admission of the list before opening statements was also unnecessary because the jury would learn of the scale of the outbreak from plaintiffs' experts and defendants' testimonies. This error however, was harmless because the court's second ruling, which allowed the admission of the list as rebuttal evidence, was not an abuse of discretion. Plaintiffs presented multiple theories in their opening statement directed at the "rogue" character and "ugly track record" of the NECC and compounding pharmacy products in general. The NECC customer list directly refuted that there was something inherently wrong with obtaining drugs from a compounding pharmacy.

Plaintiffs additionally argue that the court erred in admitting the NECC customer list because it was unfairly prejudicial, lacked foundation, and was a hearsay document for which there was no exception. These arguments were not preserved below. We review unpreserved evidentiary issues for plain error affecting the party's substantial rights. *Ykimoff v Foote Mem Hosp*, 285 Mich App 80, 86; 776 NW2d 114 (2009).

Defendants do not dispute that the NECC customer list was hearsay. Rather, they argue that the list was admissible under MRE 803(8). That rule allows the admission of:

> Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, and subject to the limitations of MCL 257.624.

The list was admissible pursuant to MRE 803(8)(B) under "matters observed pursuant to duty imposed by law as to which matters there was a duty to report." Neither party disputed that FDA regulation involved ensuring the safety of drugs released to the public and that the FDA was under a duty to compile and release the list to inform customers of the NECC of the potential for contamination and infection from contaminated steroids.

We agree with plaintiffs that the report was not authenticated prior to its admission in either instance. "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." MRE 901(a). A public record or report is authenticated when there is evidence that the writing is "authorized by law to be recorded or filed and in fact recorded or filed in a public office, or a purported public record, report, statement, or data compilation, in

any form, is from the public office where items of this nature are kept." MRE 901(b)(7). This was never done. However, plaintiffs cannot demonstrate that their substantial rights were affected when they also admitted printouts purportedly from the FDA official website without additional authentication. *Ykimoff*, 285 Mich App at 86.

## B. FDA RECALLS

Plaintiffs contend that defendants were allowed to argue the recalls of specific FDA approved drugs in opening statement despite no evidence of recalls being introduced. "[T]he purpose of an opening statement is to tell the jury what the advocate will attempt to prove. A party may succeed or fail in this attempt." *Wiley*, 257 Mich App at 503. Defendants failed. They promised to present evidence of specific FDA drugs being recalled, but did not. The court ruled that any statements that were not supported by admissible evidence could not be argued to the jury in closing argument. The court did not find bad faith on the part of the defense in this regard and based upon the record below, neither can we. The ruling removed the theory from the jury, came after extensive intervening testimony between the unsupported contention and opening statement, and was not an abuse of discretion. Defendants followed the court's instruction in closing argument and did not mention those specific drug recalls. Plaintiffs argued the absence of supporting evidence to their advantage. Plaintiffs fail to illustrate how their substantial rights were affected.

## C. INSPECTION REPORTS

Both parties agree that the inspection reports were not admitted. Plaintiffs instead fault defendants for mentioning the inspection reports in opening without them first being admitted. As already noted, "the purpose of an opening statement is to tell the jury what the advocate will attempt to prove." *Id.* There is no requirement, and plaintiffs have cited none, that opening statements are restricted to commenting on evidence already admitted. Plaintiffs also argue that defendants failed to present fact witnesses who would substantiate the information in the inspection reports. Plaintiffs' experts, Drs. Saberski and Falco, agreed during cross-examination that inspections were conducted by the Massachusetts Board of Pharmacy in 2004 and 2011 and the NECC was not shut down. The doctors were not fact witnesses to substantiate the contents of the report however. The court ruled the testimony that the NECC was inspected and not shut down was admissible, but the inspection reports themselves were inadmissible under MRE 803(8) for lack of authentication. This ruling was not an abuse of discretion. Plaintiffs continue to argue that both doctors were mistaken about their knowledge of the reports because neither was given those reports to review. Plaintiffs' argument however, does not preclude either doctor from having knowledge of the inspections independent of his retainer. Further, plaintiffs argued the absence of evidence to the jury. Under these circumstances, plaintiffs' substantial rights were not affected.

Affirmed.

/s/ Michael J. Talbot
/s/ David H. Sawyer
/s/ Cynthia Diane Stephens